DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Robert Rutherford, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its orders denying payment for treatment, for surgery performed on March 4, 2003, and for a period of temporary total disability compensation following that surgery, and to enter a new order awarding payment for treatment, for surgery performed on March 4, 2003, without prior authorization, and for temporary total disability compensation following that surgery.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission did not abuse its discretion in denying payment for relator's epidural steroidal injections, MRI, and the March 4, 2003 surgery, because relator failed to obtain prior authorization. However, the magistrate found the commission did abuse its discretion in denying the requested temporary total disability compensation because it did not address whether relator's current period of disability was causally related to the industrial injury, and that this court should issue a limited writ of mandamus ordering respondent-commission to vacate that part of its order.
 {¶ 3} Respondent-employer, Coca-Cola Enterprises filed objections to the decision of the magistrate, not objecting to the remand, but objecting to the magistrate's conclusion thatState ex rel. Blanton v. Indus. Comm., 99 Ohio St.3d 238,2003-Ohio-3271, was distinguishable from the facts of this case because it believed that the magistrate's conclusion would create law of the case as it relates to the applicability of Blanton.
As relator notes in his response to respondent-employer's objections, the magistrate's objection of Blanton is dicta, not a conclusion of law. As such, respondent-employer's objections are overruled.
 {¶ 4} Following an independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we deny relator's request to order respondent-commission to vacate its orders denying payment for treatment and for surgery performed on March 4, 2003. However, we grant a limited writ of mandamus ordering respondent-commission to vacate that portion of its order which denied payment of temporary total disability compensation and remand the matter to the commission for a determination of whether or not there is a causal relationship between the current period of disability and the industrial injury based upon an analysis of the applicable law including, but not limited to, Blanton, supra.
Objections overruled; limited writ granted.
Sadler and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Robert Rutherford, : Relator, : v. : No. 03AP-1225 Industrial Commission of Ohio : (REGULAR CALENDAR) Coca-Cola Enterprises, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 28, 2004 Harris Burgin, L.P.A., and Ann-Dana Medven, for relator.
Jim Petro, Attorney General, and Phil Wright, Jr., for respondent Industrial Commission of Ohio.
Scheuer Mackin Breslin LLC, Robert S. Corker and James G.Neary, for respondent Coca-Cola Enterprises, Inc.
 IN MANDAMUS {¶ 5} Relator, Robert Rutherford, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying payment for treatment, for surgery performed on March 4, 2003, and for a period of temporary total disability ("TTD") compensation requested by relator following the March 2003 surgery. Relator requests that, the commission be ordered to find that the requested treatment was causally related to his allowed conditions and should be paid for, that the surgery performed in March 2003 be paid for, even though relator did not receive prior authorization for the surgery, and that TTD compensation be paid following the March 2003 surgery.
Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on April 30, 1997. Initially, relator's claim was allowed for: "lumbar sprain/strain; mild central posterior herniation of the L5-S1 disc." By order dated December 15, 2003, relator's claim was additionally allowed for: "degenerative disc disease L5-S1."
 {¶ 7} 2. Relator pursued a course of conservative treatment; however, his condition did not resolve.
 {¶ 8} 3. Relator underwent surgery on April 11, 2002 consisting of left L5-S1 laminotomy, diskectomy, and foraminotomy.
 {¶ 9} 4. Relator received TTD compensation from April 11, 2002 through July 21, 2002. Relator returned to work on July 22, 2002.
 {¶ 10} 5. On January 20, 2003, relator sought treatment from Alfred Kahn, III, M.D., the physician who performed his surgery. Apparently, relator had bent over to tie his shoe and developed very sharp low back pain radiating into his buttocks. At the time, Dr. Kahn listed the diagnosis as "[p]ossible re-herniation L5-S1 disc," and recommended epidural steroid injections and an MRI. Dr. Kahn indicated that relator would need to be off work for two weeks.
 {¶ 11} 6. The January 27, 2003 MRI revealed the following:
At L5-S1, prior left hemilaminectomy, chronic mild disc degeneration, and a moderate sized left central disc extrusion, mild contrast enhancement peridiscal and partially surrounding the left S1 root.
 {¶ 12} 7. On February 18, 2003, Dr. Kahn completed two separate C-9 forms requesting a "re-do laminectomy L5-S1."
 {¶ 13} 8. On March 5, 2003, without receiving authorization for the surgery, Dr. Kahn performed surgery on relator. In his post-operative report, Dr. Kahn noted the following: "[T]he patient is admitted at this time for elective decompression after thorough explanation of the risks and benefits." The post-operative diagnosis confirmed a "[r]ecurrent dis[c] herniation left L5-S1."
 {¶ 14} 9. The self-insured employer, Coca-Cola Enterprises, Inc. ("employer"), denied relator's C-9's requesting authorization for surgery, epidural steroid injections and the MRI.
 {¶ 15} 10. On March 7, 2003, relator filed a motion requesting a hearing to determine whether the employer should be ordered to approve the requested re-do laminectomy, epidural steroid injections and MRI, and further requested that TTD compensation be paid from January 20, 2003 until such time as relator would be capable of returning to his former position of employment. In support, relator attached the two C-9's from Dr. Kahn as well as Dr. Kahn's office note dated February 12, 2003, wherein he noted the following:
This man is in having had an epidural through a transforaminal approach and he did not feel well at all afterwards and still hurts a lot. He does not want to get that repeated and I do not blame him. The patient wants to try a redo laminectomy because he has a disc extrusion at L5-S1[.] * * * I have told him he may well need a fusion. * * * We will proceed with the decompression at his convenience. He will be scheduled for a redo L5-S1 laminectomy. Temporary total on him three months at this time.
 {¶ 16} 11. Relator's motion was heard before a district hearing officer ("DHO") on July 9, 2003. The DHO found that relator had sustained a recurrence of the L5-S1 disc herniation based upon the medical evidence of Dr. Kahn, and concluded that the re-do laminectomy, epidural steroid injections, and MRI were reasonable and necessary for the allowed conditions based upon the January 20, 2003, February 12, 2003, and February 18, 2003 records of Dr. Kahn which documented the need for the procedures caused by the allowed condition. Furthermore, the DHO awarded TTD compensation from January 20, 2003.
 {¶ 17} 12. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on August 18, 2003. The SHO vacated the prior DHO order as follows:
It is the finding of the Staff Hearing Officer that the C-86 motion filed 03/07/2003, requesting the authorization and payment of a "redo" laminectomy, epidural steroid injections and the MRI scan, is denied. The Staff Hearing Officer finds that the injured worker underwent a surgical procedure for the allowed central posterior herniation of the L5-S1 disc on 04/11/2002 and returned to his position of employment on 07/22/2002 without any medical restrictions.
The Staff Hearing Officer finds that the injured worker was found to have sustained a "new" herniation of the L5-S1 by Dr. Kahn on 03/04/2003. The injured worker apparently "blew" the same disc. The injured worker had another surgery for a "redo" laminectomy of the same disc, L5-S1.
The Staff Hearing Officer finds that the "redo" laminectomy was not an emergency surgery and may not be causally related to the 04/30/1997, industrial injury. Therefore, pursuant to O.A.C. [4123-7-24], the authorization and payment is denied, as requested by the C-86 filed 03/07/2003 and the incorporated C-9 filed 02/18/2003.
The Staff Hearing Officer further finds that temporary total disability compensation for the period from 01/20/2003 to 09/02/2003, is denied as it is premised upon a period of disability related to an unauthorized surgical procedure.
This order is based upon the medical reports of Dr. Kahn (02/06/2002, 01/20/2003, 03/06/2002 and 03/04[/]2003) and O.A.C. [4123-7-24].
 {¶ 18} 13. Relator's appeal was refused by order of the commission mailed October 3, 2003.
 {¶ 19} 14. On December 12, 2003, relator filed the instant mandamus action in this court challenging the August 18, 2003 SHO order denying payment for the re-do laminectomy, epidural steroid injections and the MRI, as well as denying relator TTD compensation following the surgery.
Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 21} Relator raises the following arguments in this mandamus action: (1) the commission abused its discretion by denying the payment for his re-do laminectomy, epidural steroid injections, and MRI and denying the payment of TTD compensation; (2) intervening injuries cannot occur while going through the activities of daily living; and (3) relator demonstrated good cause for retroactive authorization of surgery and treatment.
 {¶ 22} In the present case, it is undisputed that, although relator sought authorization for the epidural steroid injections, the MRI, and the re-do laminectomy, all of those procedures were performed before authorization was granted. Ohio Adm. Code4123-7-24 provides, in pertinent part, as follows:
(C) Surgical procedures and hospitalization.
Except in emergencies or where the condition of the worker who sustained an industrial injury * * * could be endangered by delay, authorization from the bureau of workers' compensation must be obtained in advance of all surgical procedures and/or hospitalization. * * * Failure to comply with this rule shall be sufficient ground for refusal to pay for services rendered.
 {¶ 23} Based on the foregoing, unless relator submitted evidence of an "emergency," then prior authorization was required. The term "emergency" is defined in Ohio Adm. Code4123-7-16 as follows:
"Emergency" is understood to mean a sudden, generally unexpected and unforeseen occurrence or set of circumstances demanding immediate action.
(A) In cases of emergency directly related to the allowed injury, * * * no prior authorization is required to perform the medical * * * service needed, or to hospitalize the claimant.
 {¶ 24} In the present case, the commission cited to Dr. Kahn's statement contained in his March 4, 2003 post-operative report wherein he indicated that "the patient is admitted at this time for elective decompression." None of the evidence presented would establish that the procedures and the surgery were performed under emergency conditions. Because questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder, this magistrate concludes that it was not an abuse of discretion for the commission to determine that the MRI and the surgery were not performed under "emergency" circumstances. With regard to the epidural steroid injections, relator failed to present any evidence that his condition had worsened to such an extent that those injections were needed on an emergency basis prior to authorization. While the record does indicate that relator sustained an exacerbation to his condition, the record does not support a conclusion that the epidural steroid injections were performed on an "emergency" basis. Likewise, the commission could have found that, although relator did not receive prior authorization, the procedures and surgery should be paid for by the employer and, under the right factual situation, this would not have been an abuse of discretion either. As such, this argument of relator fails.
 {¶ 25} Relator also challenges the commission's order denying TTD compensation. TTD compensation awarded pursuant to R.C.4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation is payable to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. R.C. 4123.56(A).
 {¶ 26} Even where TTD compensation payments have been previously terminated, R.C. 4123.53 grants the commission continuing jurisdiction to award TTD compensation where the claimant has again become temporarily totally disabled. State exrel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424. The court noted that a condition, even one which has reached maximum medical improvement, can "flare-up" thereby rendering claimant again temporarily totally disabled.
 {¶ 27} In the present case, relator argues that he demonstrated an exacerbation of his condition. The evidence indicates that relator bent over to tie his shoe and experienced severe pain in his low back radiating into his buttocks and that he was not able to get relief from this pain. The SHO concluded that relator was found to have sustained a "new" herniation of his disc and used that determination, in part, to ultimately deny the payment of TTD compensation. The other reason that the commission denied TTD compensation was because the surgery itself had not been authorized.
 {¶ 28} This magistrate finds that the question is the same as it always is: whether relator is again temporarily and totally disabled as a result of the allowed conditions in the claim. While Ohio Adm. Code 4123-7-24(C) provides that, where a claimant fails to receive prior authorization for surgery, sufficient grounds exist to refuse payment for the services rendered; however, the code provision does not provide that any requested period of TTD compensation is automatically denied. Provided a claimant demonstrates a causal relationship between the exacerbation/flare-up and the industrial injury disability, then the claimant can receive TTD compensation.
 {¶ 29} In the present case, the SHO did not determine whether or not there was a causal relationship between relator's current period of disability and the industrial injury. The SHO merely noted that, "the `redo' laminectomy * * * may not be causally related to the 04/30/1997, industrial injury. * * * [T]emporary total disability compensation * * * is denied as it is premised upon a period of disability related to an unauthorized surgical procedure." As stated previously, while the commission did not abuse its discretion when it denied payment for the surgery, TTD compensation can be payable if relator establishes that it was the result of the original injury.
 {¶ 30} The employer argues that, pursuant to State ex rel.Blanton v. Indus. Comm., 99 Ohio St.3d 238, 2003-Ohio-3271, the evidence clearly shows that this was a new and non-compensable injury. This magistrate disagrees. In Blanton, the claimant injured her back in May 1998 and her claim was allowed for strain lower back. She did not miss any work and only sought treatment May 21 and May 28, 1998. Thereafter, in late January 1999, claimant said she felt severe low back pain upon bending over to pick up her slippers. X-rays showed disc degeneration L4-L5, L5-S1 with osteoarthritis at L4-L5. Claimant sought payment for treatment. The commission concluded that claimant did not meet her burden of proof that her need for further treatment arose out of the May 1998 injury even though her doctor opined that it was. Ultimately, the Ohio Supreme Court agreed. The court found that claimant had only received two treatments and missed no time from work. Based upon this, the commission could conclude her lumbar strain and sprain had healed. Also, the court noted that claimant's renewed back pain was tied to an identifiable event which may or may not be related to the industrial injury given her doctor's reference to the disc degeneration L4-L5, L5-S1 with osteoarthritis L4-L5.
 {¶ 31} In the present case, relator pursued an extended course of conservative treatment and ultimately had surgery in April 2002. In January 2003, he experienced pain upon bending over to tie his shoes. Having sought extensive treatment and there being no other nonallowed conditions noted, this case is different from Blanton. As such, Blanton does not conclusively answer the causal connection question which remains to be addressed by the commission.
 {¶ 32} Based on the foregoing, this magistrate concludes that the commission did not abuse its discretion by determining that relator's epidural steroid injections, MRI, and March 4, 2003 surgery should not be paid for because relator did not await prior authorization. However, with regard to the denial of TTD compensation, this magistrate finds that the commission abused its discretion in denying the requested period of TTD compensation because it did not address whether relator's current period of disability was causally related to the industrial injury. As such, it is this magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate that portion of its order which denied the payment of TTD compensation and determine whether or not there is a causal relationship between the current period of disability and the industrial injury.
 /s/Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE